FILED
SCRANTON

DEC 1 8 2014

~~PER~~

DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CLEVELAND BUTLER,                          :
                                           :
          Petitioner                       :
                                           :
     v.                                    :  CIVIL NO. 3:CV-11-2170
                                           :
ROBERT COLLINS, et al.,                    :  (Judge Kosik)
                                           :
          Respondents                      :

## MEMORANDUM

In this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, Cleveland Butler ("Petitioner") challenges his 2000 conviction and sentence in the Court of Common Pleas of Dauphin County, Pennsylvania on numerous counts of sex-related charges and hindering apprehension. Following a jury trial, he was sentenced to 15-30 years imprisonment. He is currently confined at the State Correctional Institution at Frackville, Pennsylvania. The petition is ripe for consideration and, for the reasons that follow, will be denied.

## I.    Background

The relevant factual background of this case, as extracted from the November 15, 2010 opinion of the Dauphin County Court of Common Pleas advising Petitioner

of the intent to dismiss his petition for relief under the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, is as follows:

> After a four day trial in May 2000, a jury found [Cleveland Butler] guilty
> of seven (7) Counts of involuntary deviate sexual intercourse, (7) counts
> of statutory sexual assault, seven (7) counts of indecent assault, seven (7)
> counts of indecent exposure, seven (7) counts of corruption of minors,
> and one (1) count of hindering apprehension and prosecution, all
> docketed at 2929 C.D. 1999. The same jury also found Butler guilty of
> one (1) count each of institutional sexual assault, indecent exposure, and
> corruption of minors, docketed at 2930 C.D. 1999.

> On August 31, [the trial court] sentenced Butler to an aggregate term of
> fifteen (15) to thirty (30) [years] in a state correctional institution, along
> with fines and costs of prosecution.

> The evidence presented at trial, construed in favor of the Commonwealth
> as the verdict winner, established the following facts:

> In March of 1999, Melanie Grubb, then 15 years old and a juvenile, was
> detained at the Schaffner Youth Center for violations of probation.
> (Notes of testimony of Jury, Volume 1, dated May 11-12, 2000 at 62-63).
> While there, Grubb met Butler, who worked at Schaffner. (N.T. 164-65).
> Grubb did not know Butler before March 1999. (N.T. I 64). After an
> orientation period, Grubb was moved to a "pod" on which Butler
> worked. *Id.* She began receiving special treatment from Butler, such as
> extra telephone calls. (N.T. I 64-65).

> At some point, Grubb received photographs of herself from her mother
> in which Grubb was wearing what Butler considered to be provocative
> clothing. (N.T. 165-68). However, he also made a comment to Grubb
> about how good she looked in the photographs. (N.T. 170-73). After
> that, the relationship became romantic in nature, and included writing
> letters and physical contact. *Id.* At first, the contact was kissing that took
> place in the closet, restrooms while Grubb was cleaning, or in the
> doorway to Grubb's room. (N.T. 166-68).

> On one occasion, during "R&R" between 3:00 and 3:30 p.m., Butler
> went into Grubb's room and performed oral sex on her. (N.T. I 68-70).

On another occasion, Grubb could see Butler masturbating in a classroom across from Grubb's room. (N.T. I 170-73).

After being at Schaffner for some time, Grubb had to appear in court for her probation violation. (N.T. I 74). She was ordered to go to Gaudenzia, a rehabilitation center, for the purpose of addressing her problems without being sent to boot camp. (N.T. I 75). After arriving on approximately May 26, 1999, Grubb received a card from Butler, and left Gaudenzia through a window. (N.T. I 75-76). She went to Butler's house (N.T. I 76), where he asked [Grubb] if the staff at Gaudenzia tested for alcohol. (N.T. I 77). When Grubb told Butler that there was no alcohol testing, they went to a bar and bought alcohol, then returned to Butler's house, drank and had sex. *Id.* The sex included digital penetration of Grubb by Butler as well as vaginal intercourse. Butler then drove Grubb back to Gaudenzia, dropping her off across the street from the facility. (N.T. I 79, 90).

After being at Gaudenzia for a total of approximately four days, Grubb left again, this time going to the home of a friend. (N.T. I 80-81). After a month later, Grubb was sent back to Schaffner. (N.T. I 80-81). During the month that she was out of detention, she saw Butler on multiple occasions at his home. (N.T. I 80). Generally, Grubb would call Butler and he would pick her up and take her to his home, where they would drink and have sex. (N.T. 81-82). On these occasions, the sex included oral and vaginal sex and digital penetration, and the pair used items such as handcuffs, flavored massage oil, and chocolate syrup. (N.T. I 82-84, 86).

Butler did not return Grubb to Gaudenzia after the first time that she was at his residence. (N.T. I 85). Eventually, however, Grubb's Probation Officer saw her walking down the street and took her into custody. (N.T. I 87). Grubb estimated that she had sex with Butler on five or six occasions after she left Gaudenzia. (N.T. I 87-88).

After her return to Schaffner, Grubb found that her relationship with Butler was not the same. After talking to another girl at Schaffner, Grubb approached the staff and told them about her relationship with Butler. (N.T. I 91). Grubb told Detective Todd Johnson of the Dauphin County Criminal Investigative Division the details of her involvement with Butler. (N.T. I 93).

On July 13, 1999, Johnson and other law enforcement officers executed
a search warrant for Butler's residence. (N.T. I 181; N.T. II 66).  The
warrant produced a significant amount of physical evidence
corroborating statements made by Grubb, such as handcuffs, flavored
massage oil, and chocolate syrup. (N.T. I 185-187).  Johnson found
Grubb's description of the home to be accurate, "[d]own to the carpet
leading to the bedroom." (N.T. II 73).

(Doc. 12-15 at 52-55, Commonwealth v. Butler, No. 2929, 2930 CR 1999 (Dauphin

Cty. Ct. Com. Pl. Nov. 15, 2009)).[1]

The jury found Petitioner guilty on all charges.  He filed a Post-Trial Motion

for Extraordinary Relief based upon purported recantation letters written to him by

the victim after the trial.  On August 30, 2000, a hearing was conducted.  The

following day, Petitioner's motion was denied and the trial court imposed the

sentence of 15-30 years in prison.

On direct appeal to the Pennsylvania Superior Court, the following grounds

were raised:

1.    Trial court error when it ruled that letters written by the victim and
      statements made by the victim were admissible[2];

---

[1]  Unless otherwise noted, all citations to the record reflect the docket number
and page number assigned by the electronic case filing system (CM/ECF) rather than
the page numbers of the original documents.

[2]  This claim was addressed by the Superior Court as both an ineffective
assistance of counsel claim as it relates to counsel's cross-examination of the victim
and also a trial court error claim in allowing the hearsay testimony of Robert Monson,
one of Schaffner's counselors, who testified that the victim had presented him with a
hypothetical and solicited his advice concerning an "underage friend who was seeing
a much older adult." (Doc. 12-11 at 45, n. 10; 47.)

2.  Trial court error when it failed to grant request for a mistrial when letters written by the victim to the investigating officer and in the Commonwealth's possession were not turned over to Petitioner prior to trial or at the conclusion of victim's direct examination;

3.  Court improperly allowed impeachment testimony of Commonwealth witness Lawrence Clark, which was inadmissible since Petitioner had not testified and his credibility was not at issue;

4.  Trial court error when it failed to properly address an objection to incorrect dates on the criminal information; and

5.  Trial court error when it prohibited Petitioner from introducing a statement by the victim to the investigating detective and prohibited cross-examination of the victim about her poor relationship with her step-father.

On October 17, 2001, the judgment of sentence was affirmed. (Doc. 12-11 at 42-54.)   The Pennsylvania Supreme Court denied a request for allowance of appeal on March 6, 2002.

On February 20, 2003, Petitioner filed a pro se petition under the PCRA. Following the appointment of counsel, an amended petition was filed on October 22, 2003.  (Doc. 12-12 at 1-43.)  Evidentiary hearings were conducted on October 7, 2004 and February 2, 2005. (Id. at 44-89; Doc. 12-13 at 1-94.)

On February 28, 2006, the PCRA court issued an opinion advising Petitioner of the intent to dismiss the PCRA petition.  Petitioner filed a motion to proceed pro se

and a request for a <u>Grazier</u>[3] hearing, which the court denied on April 7, 2006. On the same date, an order was entered dismissing the PCRA petition.

An appeal from the denial of the PCRA was filed with the Superior Court. On June 29, 2007, the Superior Court remanded the case for purposes of a <u>Grazier</u> hearing, and directed that the trial court take under advisement Petitioner's request for new counsel. (Doc. 12-14 at 41-43.) The Superior Court did not reach the merits of the counseled PCRA petition analyzed by the trial court in its February 28, 2006 opinion because on appeal to the Superior Court, Petitioner only raised the issue relating to his <u>pro</u> <u>se</u> status.

On August 24, 2007, the PCRA court set a date for a <u>Grazier</u> hearing. On August 30, 2007, Petitioner filed a "Motion to Withdraw Request to Proceed Pro Se and in the Alternative the Appointment of Conflict Free PCRA Counsel and Nullification of Prior PCRA Proceedings Due to Present PCRA Counsel's Conflicting Interest." A hearing was conducted on September 18, 2007 to determine Petitioner's intentions with respect to representation. Petitioner stated that he did not wish to proceed <u>pro</u> <u>se</u>, but also did not wish to continue with his originally appointed PCRA counsel. As such, new PCRA counsel was appointed. The PCRA court did not

---

[3] In <u>Commonwealth v. Grazier</u>, 552 Pa. 9, 713 A.2d 81 (Pa.1998), the Supreme Court held that "[w]hen a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one."

address any allegations at this time by Petitioner that his original PCRA counsel had a

conflict of interest.  Petitioner was informed that his newly-appointed PCRA counsel

could raise any alleged ineffectiveness claims to the extent they existed.  New PCRA

counsel was appointed on September 19, 2007, and an amended PCRA petition was

filed on Petitioner's behalf on December 20, 2007.  (Doc. 12-14 at 45-55.)  The

following grounds were raised in the counseled amended PCRA:

> 1.  Whether the PCRA court erred when it determined that trial and
> appellate counsel were not ineffective for failing to secure the testimony
> of several character witnesses that were ready, willing and available to
> testify on behalf of the defendant at the time of trial as to his reputation
> for good sexual behavior in the community;
>
> 2.  Whether the trial court erred when it determined that trial and
> appellate counsel were not ineffective for failing to secure the testimony
> of two (2) alibi witnesses that were ready, willing and available to testify
> as to the whereabouts of the defendant on the day of May 29, 1999;
>
> 3.  Whether the PCRA court erred when it determined that trial and
> appellate counsel were not ineffective for failing to challenge the
> sufficiency of the probable cause contained within the search warrant
> issued to search defendant's residence as the information utilized therein
> was stale; and
>
> 4.  Whether the PCRA court erred when it determined that trial and
> appellate counsel were not ineffective for failing to file a Bill of
> Particulars requesting that the Commonwealth set forth the dates specific
> when the alleged crimes were to have occurred.

(Id. at 49.)  Despite the filing of this counseled amended PCRA petition, on January

4, 2008, Petitioner filed a Motion to Proceed Pro Se and Request that Leave be

Granted to Allow Present PCRA Counsel to Withdraw.  On January 17, 2008, PCRA

counsel filed a motion to withdraw.  Based upon these filings, the PCRA scheduled a

Grazier hearing for February 21, 2008.  The hearing was conducted and on March 10,

2008, both Petitioner's request to proceed pro se and PCRA counsel's motion to

withdraw were granted.

On January 25, 2008, an amended PCRA petition was filed.  (Doc. 12-14 at 56-

99.)  It is unclear if this was prepared and submitted pro se or with the assistance of

PCRA counsel prior to his withdrawal.  The following four (4) grounds were raised:

1.   PCRA court erred when it determined that trial and appellate
counsel were not ineffective for failing to secure the testimony of
several character witnesses that were ready, willing and available
to testify on behalf of the Appellant at the time of trial as to his
reputation for good sexual behavior in the community;

2.   PCRA court erred when it determined that trial and appellate
counsel were [not] ineffective for failing to secure the testimony of
two [] alibi witnesses that were ready, willing, and available to
testify as to the whereabouts of the Appellant on the day of May
29, 1999;

3.   PCRA court erred when it determined that trial and appellate
counsel were not ineffective for failing to challenge the
sufficiency of the probable cause contained within the search
warrant issued to search Petitioner's residence as the information
utilized therein was stale; and

4.   PCRA court erred when it determined that trial [] and appellate
counsel were not ineffective for failing to file a bill of particulars
requesting that the Commonwealth set forth the dates specific
when the alleged crimes were to have occurred.

(Id.)

8

On July 16, 2008, Petitioner filed an Amended Pro Se PCRA Petition. (Doc.

12-15 at 1-50.) In the amended petition, he set forth the following grounds and

numbered them as indicated:

> Claim #5  Second PCRA counsel, first PCRA counsel, and appellate counsel labored under an actual and/or perception of a conflict of interest; Second PCRA counsel rendered ineffective assistance in failing to raise first PCRA counsel's conflict of interest, and for failing to raise appellant counsel's conflict of interest in violation of Petitioner's rights under the 6th and 14th Amendments of the Constitution of the United States, and Article One, Sec. 9 of the Pennsylvania Constitution, and Pa. R.P.C., Rule 1.7;

> Claim #6  Second PCRA counsel was constitutionally ineffective for failing to raise first PCRA counsel's ineffectiveness in failing to raise appellate counsel's ineffectiveness for not raising trial counsel's ineffective assistance for not filing a motion to quash the indictment due to government misconduct during the institution of the prosecution in violation of the Due Process Clause of the 14th Amendment of the United States Constitution, and Article One, §9 of the Pennsylvania Constitution;

> Claim #7 Second PCRA counsel rendered ineffective assistance for not raising first PCRA counsel's, and appellate counsel's ineffectiveness in not raising trial counsel's ineffectiveness for not raising an objection to the Trial Court's order granting Petitioner's motion for a hearing for extraordinary relief as the order on it's face was in violation of the 6th Amendment's Compulsory Clause and the 14th Amendment's Due Process/Equal Protection Clauses of the Constitution of the United States, and, Article One, Sec. 9 of the Constitution of Pennsylvania in that the order prohibited Defendant from presenting witnesses in his defense;

> Claim #8 PCRA Counsel(s), Second and First, were constitutionally ineffective under Article One, Sec. 9 of the Pennsylvania Constitution for failing to raise appellate and trial counsel's ineffectiveness for failing to request the vacation of

conviction on the indictment at 2930 CR 1999, as there existed a
variance between the indictment and the proof presented at trial in
violation of the Due Process clause of the 14th Amendment to the
Constitution of the United States;

Claim #9 Second PCRA counsel rendered ineffective assistance
for failing to raise first PCRA counsel's, and appellate counsel's
ineffectiveness for failing to raise trial counsel's ineffectiveness
for not procuring from Schaffner Youth Detention Center the
security/activity logs compiled during the period alleged in 2930
CR 1999; or in the alternative for not presenting this claim under
Brady v. Maryland as the Commonwealth failed to disclose during
the discovery process;

Claim #10 The PCRA court abused its discretion when it denied
Petitioner's request for discovery of specific documents and
records in the possession of Schaffner Youth Detention Center and
the Commonwealth under Pa.R.Crim.P. 902(E); and that, the
application of Pa.R.Crim.P. 902(E) under the circumstances of this
case is violative of Petitioner's rights under the Due Process
clause; and

Claim #11 Second PCRA counsel was ineffective for failing to
raise first PCRA counsel's ineffectiveness in failing to raise
appellate counsel's ineffectiveness for not raising trial counsel's
ineffectiveness for not presenting to the court and jury the
available evidence and witnesses that Petitioner lacked means of
transportation during the time period alleged in 2929 CR 1999.

(Doc. 12-15, Amended PCRA Petition 7/16/08.)

On November 15, 2010, the PCRA court issued a lengthy Memorandum

addressing Petitioner's PCRA claims and apprising him of the court's intent to

dismiss his petition. (Doc. 12-15 at 52-82.) Thereafter, on December 13, 2010, an

order was entered denying the PCRA petition.

Petitioner filed an appeal with the Pennsylvania Superior Court. On October

17, 2011, the Superior Court affirmed the decision of the PCRA court. (Doc. 12-16 at 76-80.)  The Superior Court found that Petitioner raised 10 issues for appeal, and that based on the record and the PCRA court's opinion of November 12, 2010, the PCRA court thoroughly and accurately addressed all of the appeal issues and that Petitioner was not entitled to PCRA relief.[4]  (Id. at 80.)

On November 21, 2011, the instant § 2254 habeas corpus petition was filed. The following seven (7) grounds are raised:

1.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel not ineffective in failing to consult with Petitioner regarding his defense; and, that appellate counsel did not labor under a conflict;

2.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel not ineffective when he did not file a pre-trial and post-trial motion to quash the indictment; and, that

---

[4] On appeal, the Commonwealth argued that Petitioner did not properly preserve issues one through four in his underlying PCRA petition, and therefore waived those issues on appeal.  However, based on a review of the record, the Superior Court found that Petitioner, through counsel, raised issues 1 through 4 in this PCRA petition filed on January 25, 2008.  Counsel was later dismissed, after which Petitioner filed his pro se amended PCRA petition on July 16, 2008.  Although the July 2008 petition did not restate or explicitly incorporate the issues raised in the January 2008 petition, Petitioner begins numbering his issues in the July 2008 petition at "#5."  As such, the Superior Court found it was obvious that Petitioner intended to incorporate issues 1 though 4, as set forth in the January 2008 petition, within the July 2008 petition.  Moreover, the Superior Court noted that the trial court addressed the merits of all 10 issues presented for appeal.  For these reasons, the issues raised in the January 2008 petition were found to be preserved for review on appeal.  (Id. at 80, n. 2.)

appellate counsel likewise not ineffective for omitting this claim on direct appeal due to conflict of interest;

3.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel was not ineffective in failing to object to the court's order granting Petitioner's request for extraordinary relief which violated Petitioner's rights under the 6th and 14th Amendments;

4.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel was not ineffective for not requesting the vacation of conviction on the charges at 2930 CR 1999 due to the existence of a variance between the charging document and the proof presented at trial;

5.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington and Brady v. Maryland, in adopting the PCRA court's factual findings that the Petitioner did not establish: 1) the Commonwealth did not fail to disclose Brady material and 2) trial counsel was not ineffective for failing to obtain exculpatory document from Schaffner Youth Detention in the Matter of 2930 CR 1999, without the benefit of an evidentiary hearing so that Petitioner could properly develop the facts in support of this issue;

6.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel was not ineffective for failure to present evidence of Petitioner's lack of means of transportation in violation of the 6th and 14th Amendments; and

7.  Pennsylvania Superior Court applied an unreasonable application of Strickland v. Washington by adopting the PCRA court's factual findings that trial counsel not ineffective in failing to investigate and present an alibi defense in the matters of 2929, 2930 CR 1999.

(Doc. 1, Pet.)

## II.   Governing Legal Principles

A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). As Petitioner's conviction became final after 1996, his case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 (AEDPA). Habeas relief is only available on the grounds that a petitioner's judgment of sentence or confinement violates federal law. 28 U.S.C. § 224(a); Wilson v. Corcoran, 536 U.S. 1 (2010)(per curiam). State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. See Swarthout v. Cooke, 563 U.S. 216, ___, 131 S.Ct. 859, 861-62, 178 L.Ed.2d 732 (2011)(citations omitted); see also Glenn v. Wynder, 743 F.3d 402, 407 (3d Cir. 2014)(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)([I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).

A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief; (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the AEDPA.

### A.   Exhaustion and Procedural Default

Under 28 U.S.C. § 2254(b)(1)(A), a federal district court may not grant a

habeas petition filed on behalf of "a person in custody pursuant to the judgment of a [s]tate court" unless "the applicant has exhausted the remedies available in the courts of the [s]tate." 28 U.S.C. § 2254(b)(1)(A); Harrington v. Richter, 562 U.S. 86, ___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts. To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). "[A] state habeas petitioner must present the 'substantial equivalent' of his federal claim to the state courts in order to give the state courts 'an opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 543 (3d Cir. 2014)(quoting Picard v. Connor, 404 U.S. 270, 277-78 (1971)).

A federal habeas petition "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Under the procedural default doctrine, a federal habeas court is precluded from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would not find the claim procedurally barred under state law. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000). Although treated as technically exhausted, such claims are nonetheless considered procedurally defaulted. Coleman, 501 U.S. at 735 n. 1; Lines, 208 F.3d at 160 n. 9.

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001). To satisfy the first exception, a petitioner must show: (1) cause for his failure

to raise his claim in state court; and (2) prejudice to his case as a result of that failure.

Coleman, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the

petitioner must identify "some objective factor external to the defense" that impeded

his ability to raise the claim in state court. Murray v. Carrier, 477 U.S. 478, 488

(1986). Once "cause" has been successfully demonstrated, a petitioner must then

prove "prejudice."[5] To establish "prejudice," "the habeas petitioner must show 'not

merely that the errors at ... trial created a *possibility* of prejudice, but that they worked

to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions.'" Id. at 494 (citing United States v. Frady, 456 U.S. 152,

170 (1982)(emphasis in original)).

Procedural default may also be excused if a petitioner can demonstrate that a

fundamental miscarriage of justice will occur, i.e., that he is "actually innocent" of the

crimes against him. Bousley v. United States, 523 U.S. 614, 623 (1998). A

fundamental miscarriage of justice will occur if a petitioner can establish that in light

of new evidence it is more likely than not that no reasonable juror would have

convicted him absent the claimed error. Schlup v. Delo, 513 U.S. 298, 327-28

(1995). The fundamental miscarriage of justice exception is confined to cases of

actual innocence as compared to legal innocence, where the petitioner can show that

---

[5] If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. See Smith v. Murray, 477 U.S. 527, 533 (1986).

it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.  See McQuiggin v. Perkins, ___ U.S. ___, 133 S.Ct. 1924, 1931-32, 185 L.Ed.2d 1019 (2013).  "[A] petitioner asserting actual innocence ... must rely on 'reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'" not presented at trial.  Munchinski v. Wilson, 694 F.3d 308, 337-38 (3d Cir. 2012)(citing Schlup, 513 U.S. at 324).  New evidence which tends to undermine the credibility of a witness "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness']" account of petitioner's actions.  Sawyer v. Whitley, 505 U.S. 33, 349 (1992).

The United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982).  See Wenger, 266 F.3d at 227-28.  Instead, the Third Circuit held that the district court should review the merits of the exhausted claims, but must not decide the merits of the claims that are barred under the procedural default doctrine.  Id.  In addition, a district court has the discretion to consider a state prisoner's unexhausted claim and deny it on the merits "if it is perfectly clear that the applicant does not raise even a colorable federal claim."  Granberry v. Greer, 3481 U.S. 129, 135 (1987).

### B.   Standard of Review

The AEDPA specifies that the standard of review applicable to a particular

claim depends on how that claim was resolved by the state courts. Breakiron v. Horn,

642 F.3d 126, 131-32 (3d Cir. 2011).  If an exhausted claim has not been adjudicated

by the state courts, then de novo review applies.  Id. at 131 (citing Porter v.

McCollum, 558 U.S. 30, 39 (2009)). If, however, the state court's highest court

adjudicated a federal habeas claim on the merits, rather than on a procedural or some

other ground, the federal court must review the claim under the deferential standard

contained in 28 U.S.C. § 2254(d); see Appel v. Horn, 250 F.3d 203, 210 (3d Cir.

2001).[6]

---

[6] "An 'adjudication on the merits' has a well settled meaning: a decision finally
resolving the parties' claims, with res judicata effect, that is based on the substance of
the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn,
355 F.3d 23, 247 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Horn, 545 U.S.
374 (2005).  Further, an "adjudication of the merits" can occur at any level of state
court.  Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009).

The differential standard of 28 U.S.C. § 2254(d) applies even "when a state
court's order is unaccompanied by an opinion explaining the reasons relief has been
denied"; as explained by the Supreme Court, "it may be presumed that the state court
adjudicated the claim on the merits in the absence of any indication or state-law
procedural principles to the contrary." Richter, ___ U.S. at ___, 131 S.Ct. at 784-85.
Likewise, if a petitioner has presented the claims raised in a federal habeas
application to a state court, and the state court opinion addresses some but not all of
those claims, the federal habeas court must presume that (subject to rebuttal) that the
state court adjudicated the unaddressed federal claims on the merits.  Johnson v.
Williams, ___ U.S. ___, ___, 133 S.Ct. 1088, 1095-96, 185 L.Ed.2d 105 (2013).  The
consequence of this presumption is that the federal habeas court will now review the
previously unaddressed (but clearly presented) claim under § 2254(d) whereas, in the
past, federal habeas courts often assumed "that the state court simply overlooked the

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). In short, section 2254(d)(1) governs federal court review of the state court's legal conclusions, while section 2254(d)(2) governs review of factual findings. The AEDPA places the burden on the petitioner to make this showing. Williams v. Taylor, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meaning. Bell v. Cone, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "contrary to" clause of § 2254(d)(1) if a state court either "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Early v. Packer, 537 U.S. at 405-06 (distinguishing the "contrary to" and the "unreasonable application" standards); see also Grant v. Lockett, 709 F.3d 224, 231 (3d Cir. 2013).

---

federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." Id. at ___, 133 S.Ct. at 1091-92.

A federal court may also grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407. Alternatively, an "unreasonable application" of federal law occurs if the state court chose the correct rule of law based on the facts, but applied the rule in an "objectively unreasonable way." Id.; see also Rompilla v. Beard, 545 U.S. 374, 380 (2005).

"[R]eview under 28 U.S.C.§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, _ U.S. ___, ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011); see also Rapelje v. McClellan, ___ U.S. ___, ___, 134 S.Ct. 399, 400, 187 L.Ed.2d 442 (2013). For purposes of § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 528 U.S. at 411. Rather,

> an "unreasonable application of" [Supreme Court] holdings must be "'objectively unreasonable," not merely wrong; even "clear error" will not suffice. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v.

Richter, 562 U.S. ___, ___, 131 S.Ct. 770, 786-87, 178
L.Ed.2d 624 (2011).

White v. Woodall, ___ U.S. ___, ___, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014).

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts"

clause is whether the petitioner has demonstrated by "clear and convincing evidence,"

§ 2254(e)(1), that the state court's determination of the facts was unreasonable in

light of the record. Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011)(citing Rice

v. Collins, 546 U.S. 333, 338-39 (2006)("State-court factual findings, moreover, are

presumed correct; the petitioner has the burden of rebutting the presumption by 'clear

and convincing evidence.'")(quoting § 2254(e)(1))(citing Miller-El v. Dretke, 545

U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir.

2009)("Under the § 2254 standard, a district court is bound to presume that the state

court's factual findings are correct, with the burden on the petitioner to rebut those

findings by clear and convincing evidence."). Further, as with § 2254(d)(1), the

evidence against which a federal court measures the reasonableness of the state

court's factual findings is the record evidence at the time of the state court's

adjudication. Rountree, 640 F.3d at 538 (citing Cullen, ___ U.S. at ___, 131 S.Ct. at

1401-03).

The Third Circuit has developed a two-step inquiry for reviewing a § 2254

petition. As noted above, the court must first identify the applicable Supreme Court

precedent. Outten v. Kearney, 464 F.3d 401, 413 (3d Cir. 2006). The petitioner must

show that the Supreme Court precedent requires the opposite result, not merely that his interpretation is more plausible than that of the state court. Id. Second, the federal habeas court must objectively evaluate whether the state court decision was an unreasonable application of Supreme Court precedent. Id., 464 F.3d at 414 (citing Werts v. Vaughn, 228 F.3d 178 (3d Cir. 2000)). The district court cannot grant relief simply because "we disagree with the state court's decision or because we would have reached a different result." Id. The court may only grant relief if "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. (quoting Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004)).

Finally, "[i]n considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." Simmons v. Beard, 590 F.3d 223, 232 (3d Cir. 2009)(quoting Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).)

## III.  Discussion

### A.   Procedurally defaulted claims

Respondents state that the ineffective assistance of counsel claims raised by Petitioner in the first six grounds of his petition were raised in his direct appeal and/or on appeal from the denial of his PCRA petition and, as such, have been exhausted. As such, these claims will be addressed on the merits. However, they maintain that

ground seven, as well as any substantive due process claims raised by Petitioner are procedurally defaulted.

Ground Seven, as presented in the habeas petition, is factually different from the claim raised on appeal with the State courts.  On appeal from the denial of PCRA relief, Petitioner argued that his trial counsel was ineffective for failing to present an alibi defense by calling two witnesses, Leah and Dora Roche.  (Doc. 12, Ex P at 5-6.)  However, in his petition, he argues that trial counsel was ineffective for failing to use a combination of his work schedule, his girlfriend (Kopera), and the fact that his driving privileges were suspended as an alibi defense.  As such, these claims are factually different, and therefore not fairly presented to the State courts.  Because Petitioner is unable to present his claims in the State courts, he has procedurally defaulted his claims.

To the extent Petitioner raises claims concerning violations of his substantive due process rights under the Fourteenth Amendment, Petitioner has never presented these claims in the State courts as independent grounds, but only as support for his ineffectiveness of counsel claims.  As such, they are also procedurally defaulted.

In opposition to Respondents' arguments, Petitioner relies on the holding in Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), to excuse his procedural defaults.  The Third Circuit Court of Appeals has explained the Martinez Rule as follows:

In <u>Martinez</u>, the Supreme Court held that, where state law requires a
prisoner to raise claims of ineffective assistance of trial counsel in a
collateral proceeding, rather than on direct review, a procedural default
of those claims will not bar their review by a federal habeas court if three
conditions are met: (a) the default was caused by ineffective assistance
of post-conviction counsel or the absence of counsel, (b) in the initial-
review collateral proceeding (<u>i.e.</u>, the first collateral proceeding in which
the claim could be heard) and (c) the underlying claim of trial counsel
ineffectiveness is "substantial," meaning "the claim has some merit,"
analogous to the substantiality requirement for a certificate of
appealability. <u>Martinez</u>, 132 S.Ct. at 1318-20. The Court adopted this
"equitable ruling" for several reasons. <u>Id</u>. at 1319. First, "[t]he right to
the effective assistance of counsel at trial is a bedrock principle in our
justice system" vital to ensuring the fairness of an adversarial trial. <u>Id</u>. at
1317. Second, a prisoner cannot realistically vindicate that right through
a claim of ineffective assistance of trial counsel without "an effective
attorney" to aid in the investigation and presentation of the claim. <u>Id</u>.
Finally, if the lack of effective counsel in an initial-review collateral
proceeding could not excuse the federal procedural default bar, no
court–state or federal–would ever review the defendant's ineffective
assistance claims, given that they were first brought in that collateral
proceeding. <u>Id</u>. at 1316.

The majority in <u>Martinez</u> noted that it was propounding a "narrow," <u>id</u>.
at 1315, "limited qualification" to <u>Coleman</u> <u>id</u>. at 1319. Even so, what
the Court did was significant. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 1327 (Scalia, J.,
dissenting)(criticizing <u>Martinez</u> as "a radical alteration of ... habeas
jurisprudence"); <u>Lopez v. Ryan</u>, 678 F.3d 1131, 1136 (9th Cir.
2012)("<u>Martinez</u> constitutes a remarkable–if 'limited,'–development in
the Court's equitable jurisprudence." (citation omitted)).

<u>Cox v. Horn</u>, 757 F.3d 113, 119 (3d Cir. 2014).

Clearly, <u>Martinez</u> does not apply to the substantive due process claims

Petitioner first seeks to raise in the pending habeas corpus petition. As explained

above, the <u>Martinez</u> holding only applies to ineffective assistance of trial counsel

claims. As such, because Petitioner's substantive due process claims were not fairly

presented to the State courts as independent due process grounds, the doctrine of procedural default requires their dismissal. Petitioner has not established cause or prejudice, or that a fundamental miscarriage of justice will occur, ie., that he is innocent of the crimes against him.

In Ground Seven, Petitioner claims that trial counsel was ineffective for failing to investigate and present an alibi defense, specifically, by using a combination of his work schedule, his girlfriend and the fact that his driving privileges were suspended. With respect to this ground, even if the Court were to find that the default of this claim was caused by the ineffective assistance of PCRA counsel in the initial-review collateral proceeding, the asserted ineffectiveness claim is not "substantial" for the following reasons.

The failure of PCRA counsel to raise an ineffective assistance of trial counsel claim may constitute "cause" if (1) PCRA counsel's failure itself constitutes ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one," i.e., that the claim has some merit. Martinez, ___ U.S. at ___, 132 S.Ct. at 1318-19.

To prove ineffective assistance of counsel under Strickland, supra, Petitioner must demonstrate that his trial attorney's performance was deficient, in that it fell below an objective standard of reasonableness, and that he suffered prejudice as a

result of trial counsel's deficient performance. Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064.  To demonstrate prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068. Petitioner bears the burden of establishing both components. Id. at 687, 104 S.Ct at 2064.

In his PCRA petition, Petitioner raised the claim that trial counsel was ineffective in failing to call alibi witnesses, specifically Leah and Dora Roche.  A hearing on the petition was conducted wherein trial counsel testified with respect to his reasons for not pursuing an alibi defense.  He testified that Petitioner did not advise him of the existence of any alibi witnesses, and furthermore that an alibi defense would not have been effective because there was too much time covered by the charging documents and due to the possibility of incriminating evidence being exposed through any such testimony. (Doc. 12-13, PCRA Hr'g Tr. at 54-59.)

Based on the foregoing, the PCRA court found that trial counsel was not ineffective in failing to present the alibi witnesses Plaintiff referenced.  Moreover, credibility determinations favored trial counsel, particularly in light of his vigorous defense of the case during the five day trial. (Doc. 12-15 at 64-66.)  The PCRA court's findings were affirmed by the Pennsylvania Superior Court on appeal. (Doc.

12-16 at 76-80.)

While the specific basis for the alibi ground Petitioner attempts to now present in his habeas petition is different than the ground raised in the PCRA petition, it is clear, based upon the PCRA hearing transcript, that any claim raised by Petitioner that counsel was ineffective in not pursuing an alibi defense is without merit.

As stated by the PCRA court, and affirmed on appeal by the Pennsylvania Superior Court, in order to establish an ineffectiveness claim for failing to call a witness, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness, or counsel should have otherwise know of the witness; (4) the witness was prepared to cooperate and testify for the defendant at trial; and (5) the absence of the testimony prejudiced the petitioner so as to deny him a fair trial. Commonwealth v. Todd, 820 A.2d 707, 712, citing Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa. Super. 2002). (Doc. 12-15 at 65.)

In light of the facts that Petitioner did not indicate to counsel that he had potential alibi witnesses and trial counsel's concerns that an alibi defense would not have been effective due to the length of the time span covered by the charging documents and the potential for incriminating evidence to be elicited, it cannot be found that the failure to present any type of alibi defense was an unreasonable strategy. Moreover, there is nothing in the record to suggest, much less show, that

but for counsel's alleged errors, the result of the proceeding would have been different. For these reasons, Petitioner has not presented facts to demonstrate a substantial claim of ineffectiveness of PCRA counsel to overcome his procedural default of Ground Seven in his habeas petition.

### B.   Merits Review of Exhausted Claims

The court will now review Petitioner's remaining claims on the merits, for the most part all ineffective assistance of counsel claims. The State courts applied the following three-pronged standard in analyzing what a petitioner must demonstrate to succeed on an ineffective assistance of counsel claim: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. See Commonwealth v. Allen, 833 A.2d 800, 802 (Pa. Super. 2003); Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987). (Docs. 12-15 at 58; 12-16 at 79.)

The Third Circuit Court of Appeals has held that Pennsylvania's three-prong ineffective assistance of counsel standard is not contrary to Strickland. See Jacobs v. Horn, 395 F.3d 92, 106 n. 9 (3d Cir. 2005)(citing Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000))(holding that Pennsylvania's three-prong test corresponds with Strickland's two prong test). Accordingly, the ineffective assistance of counsel standard applied by the Pennsylvania courts in this case was not contrary to clearly

established Supreme Court precedent. As such, our inquiry turns to whether the

decision of the State court was an unreasonable application of <u>Strickland</u>. In

conducting this analysis, Petitioner must demonstrate that: (1) counsel's

representation fell below an objective standard of reasonableness; and (2) there is a

reasonable probability that, but for counsel's error, the result would have been

different. <u>Strickland</u>, 466 U.S. at 687.

> 1. *Ineffective assistance of trial counsel in failing to consult*
> *with Petitioner regarding his defense and appellate*
> *counsel's laboring under a conflict*

Petitioner asserts that the Pennsylvania Superior Court applied an unreasonable

application of <u>Strickland</u> by adopting the PCRA court's factual findings that (1) trial

counsel was not ineffective in failing to consult with Petitioner regarding his defense

and (2) appellate counsel did not labor under a conflict due to his employment with

the public defender's office when that office represented the victim in a juvenile

matter.

Without unnecessary elaboration, the record establishes that the state court's

adjudication did not result in a decision that was contrary to or involved an

unreasonable application of <u>Strickland</u>. With respect to the ineffectiveness of counsel

in consulting with Petitioner with respect to the defense in his case, Petitioner's own

admissions and the record reveal that Attorneys Lock and/or Russo met with

Petitioner the evening before his preliminary hearing to discuss the charges and

incorporated information provided to them in an 18 page handwritten letter prepared by Petitioner during the course of their defense strategy in the trial. Moreover, Attorney Russo was present with Petitioner at his arraignment, and thereafter both Russo and/or Lock met with Petitioner on several occasions at the Dauphin County Prison. Based upon a review of the trial transcript, it cannot be found that the record does not support the state court's findings that trial counsel consulted with Petitioner and provided an adequate defense strategy in this case.

Petitioner also claims that his direct appeal counsel, Mr. Muller, operated under a conflict of interest. He argues that when trial counsel withdrew, Attorney Muller, an employee of the Dauphin County Public Defenders Office, was appointed to represent him. According to Petitioner, this created a conflict of interest in that other employees of the Public Defenders Office represented the victim at various times with respect to her juvenile matters. Petitioner believes that certain appeal grounds concerning preferential treatment given to the victim by the Commonwealth in exchange for her cooperation in prosecuting his trial were therefore compromised by Muller.

In addressing this issue, the PCRA court found that Petitioner was unable to establish that a conflict existed rendering appellate counsel ineffective by virtue of his employment with the Public Defenders Office in that he failed to demonstrate that Attorney Muller actively represented conflicting interests and that an actual conflict

30

of interest adversely affected his performance on Petitioner's behalf. (Doc. 12-15 at 71.) Even assuming that other attorneys employed in the Dauphin County Public Defender Office had represented the victim in juvenile matters in which she was the defendant, the record failed to support any inference that Muller knew of any information helpful to Petitioner's defense that he did not use to his benefit.

To the extent Petitioner speculates that Muller did not pursue on direct appeal the issue of government favors on behalf of Petitioner for her cooperation in prosecuting Petitioner, there is no such support for any such conclusion in the record. In addition, appellate counsel can not be ineffective for failing to pursue a meritless claim as is more fully discussed by this court in addressing Petitioner's next ground.

> 2. *Ineffective assistance of trial counsel for failure to file pre-trial and post-trial motion to quash the indictment and appellate counsel's omission of this claim on direct appeal due to a conflict of interest*

Petitioner claims that trial counsel was ineffective in failing to move to quash the indictment and request a hearing with respect to the issue of Detective Johnson persuading the victim not to withdraw her complaint against Petitioner and soliciting the aid of other county officials to give her preferential treatment in exchange for doing so. In failing to file such a motion, Petitioner claims that trial counsel was limited in the scope of his examination of Johnson during trial, and unprepared to impeach him with respect to the leniency issue. As such, any opportunity to create

31

reasonable doubt in the minds of the jurors with respect to motive on the victim's part based upon the government's role in offering her a deal was lost. Petitioner claims that the Pennsylvania Superior Court erred in adopting the PCRA court's findings that trial counsel was not ineffective and in failing to remand the matter for an evidentiary hearing.

In addressing this issue, the PCRA court found that trial counsel called Detective Johnson as a witness and questioned him about the contact he had with the victim in advance of the trial. The court further found no factual basis for any claim of governmental misconduct. (Doc. 12-15 at 74-75.)

In reviewing the record, the Superior Court's affirmance of these findings by the PCRA court was not unreasonable. Trial counsel called Detective Johnson as a witness to elicit testimony to advance the defense theories that the victim lacked credibility and that the investigation was inadequately performed. He further questioned Johnson about his interactions with the victim prior to the time of the trial. (Doc. 12- 7 at 28-35.) The fact that Johnson did not respond as Petitioner had hoped does not warrant a finding that trial counsel's strategy in calling him as a witness was objectively unreasonable. Moreover, any contention by Petitioner that trial counsel was ineffective as his advocate for failing to pursue the issue of the victim receiving preferential treatment by the government in exchange for her cooperation in the investigation and at trial is wholly undermined by the record. The trial transcript

clearly supports trial counsel's pursuit of this theory, as evidenced by his vigorous cross and re-cross examinations of the victim regarding any contact she had with Detective Johnson, whether she cooperated with the government and how it came to be that she was never sent to boot camp, but rather to a much less secure facility following her trial testimony. (Doc. 12-6 at 43-45.) In addition, the victim was questioned extensively with respect to letters she had written to Johnson and whether she had been given favorable treatment in exchange for her cooperation with authorities. (Doc. 12-6 at 178; Doc.12-8 at 2-8.)

Moreover, counsel pursued this theory in his thorough cross-examination of Judge Lawrence Clark, specifically the circumstances surrounding how it came to be that he authorized the victim's transfer to the Abraxas NonResidential Treatment program, instead of the much more restrictive boot camp where he originally ordered her to be placed. (Doc. 12-7 at 81-91.) The Judge was specifically questioned about other government employees approaching him with respect to this placement in an effort to secure her cooperation in the investigation of Petitioner. Counsel also pursued this topic with other witnesses including Thomas Ford, a juvenile probation officer, who supervised the victim during the relevant time period (Doc. 12-8 at 86-92).

In light of the foregoing, the State court's finding, that trial counsel's conduct in failing to pursue a motion to quash was not ineffective, was not unreasonable in

light of the record.  Moreover, there is no reasonable probability that any error by counsel in failing to file such a motion on the basis of any alleged improper actions by the government would have resulted in a different outcome of the trial in light of the evidence against Petitioner in this case.  For these reasons, any failure of appellate counsel to raise this issue on direct appeal is also without merit.

> 3.   *Ineffective assistance of trial counsel in failing to object to the court's order granting Petitioner's request for extraordinary relief*

Following the trial, the victim wrote two letters to Petitioner in which she stated that she lied at trial.  Based on these letters, defense counsel filed a Motion for Extraordinary Relief with the trial court.  A hearing was scheduled for August 30, 2000, for the "sole purpose of taking testimony from Detective Todd Johnson."  (Doc. 13-13 at 2, Dauphin County Ct. Com. Pl. order dated 8/18/00.)

Petitioner contends that the State courts erred in finding that trial counsel was not ineffective when he failed to object to the trial court's order in that it limited the scope of the hearing to taking testimony from Detective Johnson.  He contends that this limitation denied him the right to call other witnesses, and therefore counsel was ineffective in failing to object thereto.

In addressing this claim, the PCRA court found that the trial court properly limited the scope of the hearing on Petitioner's motion for extraordinary relief to a review of the purported recantation, as opposed to permitting any opportunity to

conduct a "re-trial" in this case. In addition, the court did allow testimony beyond the parameters of the order, as the defense was permitted to call the victim, author of the recantations letters, as a witness. Although counsel for Petitioner tried to confirm the recantation, the victim testified that she wrote the letters because she still had romantic feelings for Petitioner. She further testified that both she and the Petitioner knew what really went on in the house and during the months they were together ". . . so yeah, because [she] cared about him, [she] was willing to lie and try to get him off." (Docs. 12-10 at 39-51; 12-15 at 76.) With respect to the second recantation letter, wherein the victim informed Petitioner that Detective Johnson had induced her to commit perjury, she testified that she only wrote such statements about Johnson because she was angry with him for not disclosing more to her about the trial. She also testified that no promises were ever made to her in advance of trial and that she regretted writing the recantation letters. (Doc. 12-10 at 41.) Based on the foregoing, the trial court found no ineffectiveness of counsel in failing to object to the language of the order limiting the scope of the hearing, and that no error or harm had occurred.

In his habeas petition, Petitioner argues that by failing to object to the limited scope of the hearing, trial counsel missed an opportunity to pursue the issue of government misconduct. Specifically, he believes that the victim may have been given favorable treatment with respect to her juvenile programs and placements for cooperating in the investigative stages of his case.

This court finds, however, that the State court's decision denying the ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, federal law. The purpose of the hearing was to address the matter of the recantation letters, and as such, the trial court properly narrowed the scope of the hearing to this issue. Both the victim (who wrote the letters) and Detective Johnson (who was referenced in at least one of the letters) testified at the hearing and were questioned by defense counsel. Although the court's order scheduling the hearing limited the scope to testimony from Detective Johnson, the defense was permitted to elicit testimony from the victim and as such, there was no harm. For these reasons, counsel cannot be deemed ineffective in failing to object to the court's order.

> 4. *Ineffective assistance of trial counsel in failing to request the vacation of conviction on the charges at 2930 CR 1999 due to the existence of a variance between the charging document and the proof presented at trial*

The gist of Petitioner's argument is that in the probable cause affidavit Detective Johnson averred that he found it possible for a staff member to enter a locked cell at Schaffner without anyone knowing. Petitioner claims that trial counsel was ineffective when he solely relied on Johnson's averments in preparing his defense strategy, and failed to consult with Petitioner and conduct an adequate investigation with respect to the facts averred by Johnson. If he had done so, Petitioner claims he would have learned important information including that

pursuant to State law, the Schaffner Detention Center was required to maintain a 6:1 resident to staff ratio.

At trial, counsel presented evidence with the intention of proving that it was impossible for someone to gain entrance into a locked cell without staff in the control center being alerted. However, at trial the Commonwealth changed their theory and argued that the alleged incidents at Schaffner Youth Detention Center happened during R&R between 2:45 and 3:30 p.m., at a time when the doors are not locked.

Petitioner claims that trial counsel never discussed the discovery materials with him or inquired about the daily operating procedures at Schaffner. If he had done so, he would have learned that a key was not necessary to enter a room between 7 a.m and 8 p.m., as well as the times when R&R took place. By failing to familiarize himself with these and other facts obtainable from Petitioner or staff, trial counsel was caught completely off guard when the Commonwealth changed the theory of how/when the assaults took place. (Doc. 1 at 27-28.)

The PCRA court addressed Petitioner's argument that certain material with respect to Schaffner would have enabled trial counsel to better respond to the Commonwealth's theory at trial and his belief that counsel was caught off guard as to the change in theory. The PCRA court disagreed and found that the record reflected that counsel was "well-prepared to adapt to the prosecution's case throughout the trial." (Doc. 12-15 at 77.) In support of its finding, the court pointed

to trial counsel's vigorous challenges to the victim's credibility, as well as challenges to the Commonwealth's investigation throughout the trial. Trial counsel also offered internal surveillance and documentation of the activity that occurred at Schaffner. The PCRA court found that in developing and presenting these challenges to the Commonwealth's theory, trial counsel was both aggressive and well prepared. (Doc. 12-18 at 77.) The Pennsylvania Superior Court adopted these findings. (Doc. 12-16.)

In reviewing the trial transcript, based upon the deferential standard applied to the state court's findings, the Pennsylvania Superior Court's conclusion rejecting Petitioner's ineffective assistance of counsel claim did not involve an unreasonable application of federal law. The state court identified the proper standard and, in light of the facts before it, properly applied those facts to the law. In presenting their case and conducting the direct examination of the victim, the Commonwealth focused on the specific places and times at Schaffner where physical contact had occurred. (Doc. 12-5 at 67-74.) The record reveals that in cross-examining the victim, trial counsel not only thoroughly followed up on the Commonwealth's line of questioning, but also impeached the victim with respect to testimony she had given at the preliminary hearing. (Id. at 108-117.) As such, it is clear from the facts presented that trial counsel aggressively represented Petitioner and demonstrated a reasonable basis for the strategy he pursued during the course of the trial. His strategic choices will not be second guessed by post-hoc determinations that a different trial strategy may have

yielded a better result. Strickland, 466 U.S. at 689; see also Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

> 5.   *Prosecutorial misconduct in failing to disclose*
> *Brady v. Maryland material and ineffectiveness*
> *of trial counsel in failing to obtain exculpatory*
> *documents from Schaffner Youth Detention in*
> *the Matter of 2930 CR 1999*

Petitioner claims that the Pennsylvania Superior Court applied the cases of Brady v. Maryland and Strickland unreasonably when the court adopted the PCRA court's findings that there was no Brady violation by the Commonwealth in failing to disclose documents, and that trial counsel was not ineffective for failing to obtain exculpatory documents from the Schaffner Youth Detention Center.

The PCRA court found that trial counsel thoroughly defended the claim that the encounters could have occurred in the facility unnoticed. Petitioner's claim that such logs were tantamount to alibis, which would have disproved that the sexual activity testified to by the victim occurred, were rejected by the court. As such, the PCRA court held that Petitioner was unable to demonstrate that, but for counsel's error in not obtaining the logs, the outcome of the trial would have been different. (Doc. 12-15 at 78-79.)

In his PCRA petition, Petitioner asserted as follows:

"[d]uring the discovery period the Commonwealth handed over to the Defense various documents they obtained from Schaffner Youth Detention Center, and from the Dauphin County Personnel department during the course of their investigation. The material received from the

> Commonwealth were (sic): 1) Copies of the Control Center log books
> covering the months of March, April, and May of 1999; 2) D-Unit Room
> assignment/meal count sheets covering the time period of March 27 to
> April 29, 1999; and, 3) Petitioner's entire Personnel file, including his
> payroll time sheets from February 22 to August 8, 1999.

(Doc. 12-15 at 78.)  Petitioner asserted that allegedly incomplete room assignment/ meal count sheets would have "narrowed the incident dates", and that "R&R never occurred" on his shifts.

With respect to Petitioner's assertion that the Commonwealth withheld materials in violation of Brady, the PCRA court found that he was unable to establish that the Commonwealth possessed the alleged records.  In order to establish a Brady violation, the court found that a defendant must show the following: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued.  Strickler v. Green, 527 U.S. 263, 281-82 (1999). Because Petitioner merely speculated that such evidence existed, was exculpatory and that the Commonwealth withheld it, his claim was rejected.  (Id. at 80.)  On appeal, the Pennsylvania Superior Court found that the PCRA court correctly determined that he was not entitled to collateral relief on this ground.

With respect to the ineffective assistance of counsel claim, the correct standard was applied by the State court.  Moreover, based upon the deferential standard applied to the state court's findings, the Pennsylvania court's conclusion rejecting

Petitioner's ineffective assistance of counsel claim did not involve an unreasonable application of federal law. The PCRA court's finding that, even if counsel had obtained the logs referenced by Petitioner, the outcome of the trial would not have been different, and that such discovery would not have disproved the sexual activity to which the victim testified, is not unreasonable as it is supported by the record. As such, any ineffectiveness claim is without merit.

To the extent Petitioner attempts to set forth a <u>Brady</u> claim against the Commonwealth, the standard used by the state appellate court comports with the standard announced in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1994, 10 L.Ed.2d 215 (1963). Prosecutors have an affirmative duty as described in <u>Brady v. Maryland</u>, 373 U.S. 83 (1972), to advise the defendants of the existence of, and to turn over to them, all exculpatory evidence relating to the defendants. This obligation extends to all evidence which can be used by defendants for impeachment purposes of government witnesses and in planning of defense strategies. This prosecutorial duty is grounded in the Fourteenth Amendment. <u>Brady</u>, 373 U.S. at 86-87. The purpose of <u>Brady</u> is to ensure that "criminal trials are fair," <u>Id</u>. at 87, and to ensure that a "miscarriage of justice" does not result from suppression of evidence favorable to the accused. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). If an omission is made, the focus is not whether or not the prosecution acted in "good faith or bad faith," <u>Brady</u>, 373 U.S. at 87, 83 S.Ct. at

1197, but on the fairness of the criminal trial. Bagley, 473 U.S. at 678.  A "fair trial" is one in which the verdict is worthy of confidence.  Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

There are three components of a Brady violation: (1) the prosecution must suppress or withhold evidence, (2) which is favorable to the accused, and (3) material to the defense. United States v. Battles, 514 F. App'x 242, 252 (3d Cir. 2013).  To succeed on a Brady claim, the petitioner must show that the suppressed, favorable evidence is material. (Id.) The materiality standard is satisfied "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.  In order for evidence to be material, it is not necessary that the evidence establish by a preponderance that disclosure of the evidence would have resulted in an acquittal. Kyles, 514 U.S. at 434-35.  However, in making a determination of materiality, the assessment of the omitted evidence's impact must take account of the cumulative effect of the suppressed evidence in light of the other evidence, not merely the probative value of the suppressed evidence standing alone. Id. at 436-37.

In this instance, the PCRA court's finding that Petitioner offered no support for his contention that the Commonwealth had possession of the logs and withheld them

42

from him is supported by the record.  While he argues in his habeas petition that State regulations require certain logs to be maintained by the facility, this does not mean that the Commonwealth sought these particular logs and had possession of them. Their existence does not equal the Commonwealth's possession and withholding thereof in violation of Brady.

Moreover, even if the logs were possessed by the Commonwealth and not produced, the mere possibility that they may have helped defense to the extent they would have "narrowed down" the possible incident dates, does not establish the materiality of the documents for purposes of a Brady claim.  The state court's finding that the result of the proceedings would not have been different is not unreasonable in light of the evidence presented against Petitioner at trial.   For these reasons, the court finds that Petitioner has failed to show, either that the state court unreasonably determined the facts in his case, or that the state court unreasonably applied federal law in dismissing his claim that the Commonwealth committed prosecutorial misconduct by committing a Brady violation.

> 6. *Ineffective assistance of trial counsel for failure to present evidence of Petitioner's lack of means of transportation*

Petitioner argues that the State court applied an unreasonable application of Strickland when it found that trial counsel was not ineffective in failing to present evidence that Petitioner lacked a means of transportation during the relevant time

43

period.  Petitioner claims that due to a citation he received on May 31, 1999 for an expired registration sticker, and his subsequent surrender of his license plate to avoid additional sanctions other than the 90 days suspension of registration,  he relied on others for transportation to and from work.  He claims that these facts coupled with the Commonwealth's failure to introduce evidence that he even owned a vehicle, or knew how to drive, should have caused trial counsel to offer evidence of his lack of means of transportation.

In addressing this claim, the PCRA court found that no ineffectiveness occurred at any level of representation where the defense case did not include alleged evidence that Petitioner did not own a vehicle during the time periods at issue.  (Doc. 12-15 at 81.)  The court found that the fact that Petitioner did not own a vehicle would not have precluded the jury from accepting the victim's testimony that he drove her in a vehicle, or that the encounters at his home and at the Schaffner Detention Center did not occur.  (Id.)

As the state court properly identified the applicable Supreme Court precedent, the federal habeas court must objectively evaluate whether the state court decision was an unreasonable application of Supreme Court precedent.  The court finds that it was not.  As found by the PCRA court, and affirmed by the Superior Court, whether Petitioner owned a vehicle, or had access to his own vehicle, during the relevant time period would not have precluded the jury from accepting the victim's testimony that

44

Petitioner drove her in a vehicle, or that the incidents alleged occurred at his house and at Schaffner. For these reasons, the finding by the State courts, that counsel was not ineffective in failing to pursue the lack of transportation issue, was not an unreasonable application of Supreme Court precedent.

## IV.   Certificate of Appealability

For all of the foregoing reasons, the instant petition for writ of habeas corpus will be denied. Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). There is no basis for the issuance of a COA. An appropriate order is attached.